ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| WILLIE LOUBRIEL VÉLEZ<br><br>Apelante<br><br>v.<br><br>AIREKO CONSTRUCTION MANAGEMENT SERVICES, LLC.<br><br>Apelada | **KLAN202400899** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Carolina<br><br>Civil Núm. CA2022CV02871<br><br>Sobre: Despido Injustificado Discrimen por edad Ley Núm. 2 |

Panel integrado por su presidenta, la Jueza Grana Martínez[1], el Juez Bonilla Ortiz y el Juez Pagán Ocasio.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 31 de marzo de 2025.

Comparece ante este foro, el Sr. Willie Loubriel Vélez (señor Loubriel o "el apelante") y nos solicita que revisemos una Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, notificada el 24 de septiembre de 2024. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* la Solicitud de Sentencia Sumaria presentada por Aireko Construction Management Services, LLC (Aireko o "parte apelada"). Por consiguiente, desestimó con perjuicio la querella instada por el apelante, sin imposición de costas ni honorarios de abogado.

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** el dictamen apelado.

### I.

El 31 de agosto de 2022, el señor Loubriel presentó una *Querella* sobre despido injustificado y discrimen por

---

[1] En virtud de la Orden Administrativa OATA-2023-116, se designa a la Hon. Grace M. Grana Martínez.

razón de edad, en contra de Aireko, bajo el procedimiento sumario de la Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq.*[2] En la misma, alegó que laboró para los apelados desde el 15 de febrero de 2021 hasta el 28 de julio de 2022, cuando fue despedido sin justa causa. Añadió que, inició laborando como Gerente de Proyecto ("*Project Manager*"), sin embargo, el 1 de enero de 2022 fue objeto de un cambio de posición a menor jerarquía como Superintendente Senior ("*Senior Superintendent*"). Sostuvo que, una vez Aireko le notificó su despido, trasladaron a otro empleado más joven en sustitución de éste que a la fecha del despido tenía 59 años. En su querella, esbozó que solicitó acogerse a los beneficios del desempleo. No obstante, que del Departamento del Trabajo y Recursos Humanos determinó que su último patrono no había ofrecido información que explicara de manera satisfactoria las causas del despido, por lo que, lo declararon elegible para recibir los beneficios. Es por ello, que solicitó:

a) el pago total en concepto de mesada reclamada en esta Querella, por la suma de **$23,133.00;**

b) una indemnización por los daños y angustias mentales sufridos por el Querellante a raíz del discrimen, por una suma no menor de **$150,000.00,** incluido el doble importe conforme a la Ley Núm. 100- 1959, *supra;*

c) el pago de los salarios y beneficios dejados de devengar por el Sr. Loubriel como consecuencia del despido discriminatorio efectuado en su contra, calculados desde el momento de su despido hasta el momento de la presentación de esta Querella, el cual asciende a un mínimo de **$14,320.00** al amparo de la Ley Núm. 100-1959, *supra,* incluido el doble importe reconocido en dicho estatuto;

d) el pago del veinticinco por ciento (25%) de la compensación total otorgada al Sr.

---

[2] *Querella,* anejo I, págs. 1-8 del apéndice del recurso.

Loubriel, por concepto de honorarios de abogado, más las costas y gastos del litigio;

e) el depósito por parte del Patrono en la secretaría del Tribunal de una suma equivalente a la compensación total a la cual tendría y tiene derecho el Querellante, así como el depósito de una cantidad para honorarios de abogado, conforme dispone el Artículo 11 (b) de la Ley Núm. 80, según enmendada, *supra*.

En respuesta, el 9 de septiembre de 2022, Aireko presentó su *Contestación a la Querella*.[3] En esencia, negó las alegaciones hechas en su contra y afirmó que el despido del apelante estuvo plenamente justificado, no fue arbitrario, caprichoso, o sin razón relacionada con el buen y normal funcionamiento de la compañía. Asimismo, añadió que nunca discriminaron en contra del apelante por razón de su edad, ni por algún otro motivo.

Luego de varias incidencias procesales, el 18 de enero de 2024, el señor Loubriel presentó una *Solicitud de Sentencia Sumaria*.[4] En esta, sostuvo que no existía controversia de hechos, en cuanto a que Aireko no tuvo justa causa y actuó de forma discriminatoria al despedirlo para sustituirlo por una persona más joven. A su vez, planteó que la terminación de su empleo fue caprichosa y arbitraria. Además, que no eran correcta la alegacion de los apelados sobre que el despido había sido por su negligencia al no tomar acción ante una supuesta falta en la fabricación de varillas de construcción en el proyecto de un estacionamiento y oficina médicas en el Municipio de Carolina, puesto que había sido el Sr. José Núñez Camacho (señor Núñez), quien actuó sin autorización y en incumplimiento.

---

[3] *Contestación a Querella*, anejo II, págs. 9-18 del apéndice del recurso.
[4] *Solicitud de Sentencia Sumaria*, anejo III, págs. 19-175 del apéndice del recurso.

En cuanto a los planteamientos relacionados a discrimen por edad, el señor Loubriel sostuvo que desde que lo cambiaron de posición a Superintendente Senior, solicitó le explicaran el motivo del cambio, sin tener respuesta, incluso que ni recibió una descripción del puesto. Añadió que, quienes lo reemplazaron en ambos puestos fueron personas de menor edad, lo cual evidenciaba el discrimen. Por ello, reiteró que su despido había sido injustificado y discriminatorio por razón de edad.

En la misma fecha, Aireko presentó una *Solicitud de Sentencia Sumaria*.[5] Mediante esta, expresó que el despido del señor Loubriel fue durante su periodo probatorio, el cual no necesitaba justificación, aun así, sostuvo que tenían justa causa para despedirlo. Indicó que, el apelante incumplió con sus funciones e incurrió en graves faltas, por ello, aplicaron medidas correctivas y de disciplina conforme las normas de la Compañía. Añadió que, el señor Loubriel tenía conocimiento de las normas y procedimientos de la Compañía, puesto que, conocía y había recibido el Manual del Empleado. Finalmente, arguyó que la decisión tomada buscó proteger el orden y buena marcha de los negocios, además del legítimo interés del patrono en salvaguardar la seguridad de la empresa, empleados y clientes. Así, tras sostener que no existía controversia alguna en cuanto a la improcedencia de las causas de acción de epígrafe, la parte apelada solicitó que se dictara sentencia sumaria a su favor.

---

[5] *Solicitud de Sentencia Sumaria*, anejo IV, págs. 176-882 del apéndice del recurso.

El 19 de enero de 2024, el foro primario emitió dos (2) Ordenes, mediante las cuales le concedió un término para que las partes replicaran a las mociones de sentencia sumaria.[6]

Luego de varios incidentes procesales, el 13 de febrero de 2024, Aireko presentó su *Oposición a "Solicitud de Sentencia Sumaria".*[7] En esta, afirmó que el apelante al momento del despido ocupó la posición de *Senior Superintendent,* como empleado probatorio, particularmente para un proyecto de estacionamiento en el Municipio de Carolina. No obstante, iniciado el proyecto, recibieron información por un cliente quien les levantó un planteamiento sobre el empalme de las varillas. Por consiguiente, la Compañía realizó una investigación, concluyendo que el señor Loubriel falló en las responsabilidades de su puesto y no tomó acción ante la falta grave de la fabricación de los materiales de construcción, violando así las normas de seguridad. A su vez, añadió que, el apelante fue objeto de varios señalamientos y amonestaciones previas por incumplimientos con las normas de la Compañía.

En cuanto al alegado discrimen por edad, Aireko esbozó que el señor Loubriel no logró establecer su caso *prima facie.* Añadió que, cuando el apelante comenzó a laborar para la Compañía, ya se encontraba dentro de la categoría protegida por ley, a su vez, que no fue reemplazado por alguien más joven. Por ello, reiteró que el apelante no contó con evidencia suficiente para probar su caso. Así las cosas, alegó que el despido fue

---

[6] *Orden*, págs. 883-884 del apéndice del recurso.
[7] *Oposición a "Solicitud de Sentencia Sumaria*, págs. 1043-1092 del apéndice del recurso.

justificado y no discriminatorio, por lo que procedía la desestimación del reclamo, con perjuicio.

Por su parte, el 12 de abril de 2024, el señor Loubriel presentó su *Oposición a Solicitud de Sentencia Sumaria SUMAC #140*.[8] En esencia, reiteró que la parte apelada no tuvo justa causa para el despido y actuó en forma discriminatoria al despedirlo para sustituirlo por alguien mas joven. Asimismo, indicó que Aireko no logró demostrar que éste se había desviado de sus funciones y responsabilidades. Por otra parte, negó que fuera despedido en su tiempo probatorio, puesto que, comenzó a trabajar para la Compañía desde el 15 de febrero de 2021 y trabajó ininterrumpidamente hasta el 28 de julio de 2022, cuando fue despedido. A su vez, expresó que fue despedido aun cuando no fue el responsable de realizar los empalmes de varillas en la ubicación correcta. Arguyó que, de la investigación que realizó la parte apelada concluyó que el señor Núñez, aun cuando recibió instrucciones de su parte, realizó cambios sin su permiso. Finalmente, solicitó que se declarara Ha Lugar su solicitud de sentencia sumaria y se determinara que el despido había sido injustificado en violación de la Ley Núm. 80 y discriminatorio en violación de la Ley Núm. 100.

El 10 de mayo de 2024, las partes presentaron el *Informe Conjunto sobre Conferencia con Antelación a Juicio*.[9] El 16 de agosto de 2024, fue celebrada la *Conferencia con Antelación al Juicio*.[10]

---

[8] *Oposición a Solicitud de Sentencia Sumaria SUMAC #140*, págs. 1129-1169 del apéndice del recurso.
[9] *Informe Conjunto sobre Conferencia con Antelación a Juicio*, anejo XXX, págs. 1170-1211 del apéndice del recurso.
[10] *Conferencia con Antelación al Juicio*, págs. 1212-1218 del apéndice del recurso.

Evaluadas las mociones presentadas, el 24 de septiembre de 2024, el foro primario emitió y notificó la *Sentencia* apelada.[11] En primer lugar, realizó las siguientes determinaciones de hechos:

1. Aireko Construction Management, LLC ("Aireko") es una compañía que ofrece servicios de construcción y planifica, construye y provee servicios a edificios e infraestructura.[12]

2. El Sr. Willie Loubriel Vélez laboró en Aireko como *Project Manager* desde el 15 de febrero de 2021 hasta el 15 de agosto de 2021, fecha en que culminó su contrato con término fijo de seis meses.[13] El 16 de agosto de 2021, el señor Loubriel Vélez recibió una nueva oferta de empleo a tiempo indefinido para una nueva posición en Aireko como *Project Manager*.[14]

3. El Sr. Loubriel nació el 9 de noviembre de 1962 y, al momento de su despido, tenía 59 años de edad.[15]

4. El 16 de febrero de 2021, el señor Loubriel Vélez acusó recibo de la descripción de deberes y responsabilidades de la posición de *Project Manager*.[16]

5. Como parte de las funciones de *Project Manager*, el querellante tenía la responsabilidad de "seguir las normas y reglamentos de seguridad establecidos y mantener un entorno seguro y limpio"; "ejecutar el plan de seguridad del proyecto, el programa o calendario, la calidad de la mano de obra, el costo del proyecto y el proceso de pago".[17]

6. El 16 de febrero de 2021, el señor Loubriel Vélez también acusó recibo de: (1) Manual del Empleado de Aireko; (2) Normas de Comportamiento y Seguridad; (3) contenido, requisitos y expectativas de la Política de Igualdad Oportunidad en el Empleo, Política Hostigamiento Sexual, Política para el Manejo de Situaciones de Violencia Doméstica en el Lugar de Trabajo, Programa Ambiente Libre de Drogas y Alcohol, y Política para Prohibir y Prevenir el Acoso Laboral y; (4)

---

[11] *Sentencia*, anejo XXXII, págs. 1219-1241 del apéndice del recurso.
[12] Véase, Manual del Empleado (Exhibit A de la Querellada).
[13] Véase, Oferta de empleo del 9 de febrero de 2021 (Exhibit II conjunto) y Deposición Willie Loubriel Vélez Vol. II, Págs. 10-11, Líneas: 4-13.
[14] Véase, Oferta de empleo 16 de agosto de 2021 (Exhibit A de la Querellada).
[15] Véase, Hecho 1 estipulado por las partes acogido en la Conferencia con Antelación al Juicio (CAJ) y Hoja de historial del Sr. Willie Loubriel Vélez (Exhibit I conjunto).
[16] Véase, Hecho 3 estipulado por las partes; descripción del puesto de Project Manager (Exhibit III conjunto) y Deposición Willie Loubriel Vélez Vol. II, Págs. 35-36, Líneas: 8-9.
[17] Véase, Exhibit III conjunto, *supra*.

Código de Conducta de Negocio y Política Ética.[18]

7. Al acusar recibo del Manual del Empleado, el señor Loubriel Vélez entendió que era su responsabilidad "cumplir a cabalidad con las disposiciones establecidas en el mismo", y que el mismo "está sujeto a cambios periódicos".[19]

8. Además, al haber certificado que recibió una copia del Manual del Empleado, el querellante tomó conocimiento de que "cualquier duda o información adicional que necesites puedes comunicarte con Recursos Humanos".[20]

9. Al haber recibido las normas de comportamiento y seguridad de Aireko, el señor Loubriel Vélez certificó que había "leído y entendido todas las normas de comportamiento y seguridad de Aireko. Me comprometo a trabajar de acuerdo con estas Normas".[21]

10. Al acusar recibo de las políticas de Igualdad de Oportunidad en el Empleo, Hostigamiento Sexual, Manejo de Situaciones de Violencia Doméstica en el Lugar de Trabajo, Ambiente libre de Drogas y Alcohol, Prohibir y Prevenir el Acoso Laboral, el querellante entendió que, si tenía "preguntas, en cualquier momento, con respecto a las políticas mencionadas anteriormente, consultaré con mi supervisor inmediato o con el personal de Recursos Humanos".[22]

11. El 1 de enero de 2022, luego de un análisis de compensación para definir adecuadamente los puestos de trabajo de todos los empleados en función de sus responsabilidades, aportaciones, riesgos y experiencias Aireko reclasificó el puesto del querellante a *Senior Superintendent* retroactivo al 27 de diciembre de 2021.[23]

12. Con el análisis de compensación del 1 de enero de 2022, el querellante también recibió un aumento de salario de $7,920 anuales, por lo que su salario base anual pasó a ser de $81,120.00 pero sus beneficios permanecieron

---

[18] Véase, Certificación Manual del Empleado (Exhibit C de la Querellada), las Normas de Comportamiento y Seguridad marcadas (Exhibit D de la Querellada), el Acuse de Recibo Políticas de Aireko (Exhibit E de la Querellada) y el Código de Conducta de Negocio (Exhibit F de la Querellada).
[19] Véase, Exhibit C de la Querellada, *supra.*
[20] Véase, Exhibit A de la Querellada, supra y Deposición Willie Loubriel Vélez Vol. II, Págs. 33- 34, Líneas: 15-1.
[21] Véase, Exhibit D de la Querellada, *supra.*
[22] Véase, Exhibit E de la Querellada, *supra.*
[23] Véase, Hecho 4 estipulado por las partes; Carta del 1ro de enero de 2022 (Exhibit IV conjunto) y Análisis de Compensación (Exhibit H de la Querellada).

intactos y no sufrió impacto económico como consecuencia de ello.[24]

13. El salario base más alto devengado por el Sr. Loubriel durante los últimos tres (3) años fue de $81,120.00.[25]

14. Como parte de sus deberes y responsabilidades como *Senior Superintendent*, el querellante tenía las funciones, entre otras, de:

> Supervisar toda la construcción en el site, incluyendo la coordinación de subcontratistas, la resolución de problemas cotidianos en el *job site* y la inspección de todo el trabajo durante la construcción para garantizar el cumplimiento de los planes y especificaciones.
>
> Prestar atención al detalle y monitoreo diario del trabajo en proceso para asegurar la integridad del trabajo, y que esté a la altura de los estándares de calidad de Aireko Construction. Asegurar que todo el personal del proyecto y los contratistas comprendan e implementen los requisitos de seguridad en el trabajo, trabajando con el personal de apoyo de seguridad como recurso. Se esfuerza continuamente por tener cero lesiones en todos los proyectos.[26]

15. A pesar de haber acusado recibo de la notificación sobre la reclasificación el querellante admitió que, cuando recibió la descripción de deberes para la posición de *Senior Superintendent* "lo ignoro hasta que alguien me llame y me explique"; "no contesté ni imprimí el documento, ni firmé nada".[27]

16. El señor Loubriel Vélez aceptó que, al no haber firmado la descripción de deberes para la posición de *Senior Superintendent*, alguien de Recursos Humanos lo llamó.[28]

17. El Sr. Rodolfo Puig, Operations Manager, era el supervisor inmediato del querellante y del ingeniero Roberto Dieppa, y lo fue hasta el momento de su despido.[29]

---

[24] Véase, Exhibit H de la Querellada, Íd, Carta de Willie Loubriel, 7 de marzo de 2022 (Exhibit 5 del Querellante) y Deposición Willie Loubriel Vélez Vol. II, Pág. 41, Líneas: 3-25.
[25] Véase, Hecho 7 estipulado por las partes.
[26] Véase, Job Description *Senior Superintendent* (Exhibit I de la Querellada).
[27] Véase, Exhibit I de la Querellada y Deposición Willie Loubriel Vélez Vol. II, Pág. 43, Líneas: 3- 22.
[28] Véase, Deposición Willie Loubriel Vélez Vol. II, Pág. 44, Líneas: 2-23.
[29] Véase, Deposición Carlos E. Arroyo De Jesús, Págs. 36-37, Líneas: 19-4 y Notificación de cambio en condición del empleado (Exhibit O de la Querellada).

18. A su vez, el ingeniero Dieppa se mantuvo como *Project Manager* y supervisaba al querellante para febrero de 2022.[30]

19. En la posición de *Senior Superintendent*, el Sr. Loubriel se reportaría al Sr. Dieppa, quien desde que el Sr. Loubriel comenzó a trabajar en ACM, también tenía la posición de Project Manager.[31]

20. El 18 de febrero de 2022, el querellante fue orientado por el señor Dieppa acerca de la política de la compañía en cuanto a la notificación de todo incidente porque "el caso del empleado Antonio Castro se manejó incorrectamente y se indicó que no puede volver a ocurrir. Este caso se debió haber reportado en el momento y se debió haber atendido el empleado a través de Aireko".[32]

21. El 28 de febrero de 2022, el señor Loubriel Vélez recibió su evaluación individual de desempeño en la que obtuvo una puntuación de 2.54 de 4.00.[33]

22. De la evaluación individual se desprende que el querellante no cumplió con el criterio de "cero accidentes registrables" y se le señaló que debía continuar "buscando la forma de conocer las políticas y normas de la empresa en el aspecto de seguridad de los proyectos".[34]

23. El 31 de marzo de 2022, el señor Loubriel Vélez recibió una amonestación escrita relacionada a un incidente de seguridad que envolvía el accidente de un empleado bajo su supervisión.[35]

24. El formulario de acción disciplinaria establece que el señor Loubriel Vélez, "en su rol de *Senior Superintendent* no cumplió con las expectativas en las competencias: (1) De velar que sus supervisados implementen y practiquen las expectativas de seguridad; (2) No se tomaron acciones remediativas que cambiasen el rumbo de la tendencia que señalaron los oficiales de seguridad".[36]

25. En el proyecto de estacionamiento y oficinas médicas en Carolina (en adelante, "Proyecto de Carolina"), en el cual el querellante fungía como *Senior Superintendent*, se suscitó un problema con las varillas.[37]

---

[30] Véase, Deposición Willie Loubriel Vélez Vol. II, Pág. 66-67, Líneas: 25-3.

[31] Véase, Hecho 5 estipulado por las partes.

[32] Véase, Deposición Willie Loubriel Vélez Vol. II, Págs. 82-84, Líneas: 2-9; Diálogo con empleado por incidente de seguridad (Exhibit J de la Querellada).

[33] Véase, Evaluación individual de desempeño (Exhibit K de la Querellada).

[34] *Íd.*

[35] Véase, Formulario de acción disciplinaria (Exhibit L de la Querellada).

[36] *Íd.*

[37] Véase, Deposición Willie Loubriel Vélez Vol. II, Págs. 109-110, Líneas: 2-7 y Reporte de Investigación (Exhibit N de la Querellada).

26. El 9 de junio de 2022, el inspector John Duque notificó que los empalmes de las varillas del Proyecto de Carolina se hicieron en las columnas y no en el centro del espaciamiento como indicaban los *shop drawings* del proyecto.[38]

27. El 13 de junio de 2022, el querellante generó un *Request for information* (RFI) en el que informa que "se realizaron unos empalmes de varilla en vigas en áreas no indicados en los *shop drawings*".[39]

28. Luego de haberse reportado el problema con las varillas en el Proyecto de Carolina, Aireko investigó el incidente y entrevistó, como parte del procedimiento, al Sr. José Núñez, Sr. Edwin Rivera, Sr. Luis Rivera, Sr. José Costales, Sr. Roberto Dieppa y al querellante. Los hallazgos de esta investigación constan en el documento titulado "Reporte de Investigación", fechado el 16 de junio de 2022 y suscrito por la Sra. Marilyn Rodríguez del componente de recursos humanos de Aireko.[40]

29. Previo al señalamiento del inspector Duque, el querellante ya conocía del error en el empalme de las varillas. Durante la entrevista realizada al propio señor Loubriel Vélez en el proceso de investigación, este admitió que: la inspección en un momento dado le notificó que los empalmes no se estaban instalando apropiadamente en cuanto a la dimensión del empalme y en la varilla donde se estaban haciendo. Fue en ese momento que se percató que los empalmes se estaban haciendo en las columnas y no en el medio como indica el "*shop drawing*". No recuerda la fecha.[41]

30. En la entrevista al querellante, este también aceptó que, "no notificó a nadie del error en la instalación de los empalmes ni tomó ninguna acción al respecto" para "evitar un reperpero y porque ya la inspección había aprobado los tiros de concreto con el error en la varilla".[42]

31. Las actuaciones del querellante generaron un problema de seguridad para los empleados y clientes, así como al edificio en construcción.[43]

32. Los hallazgos de la investigación plasmados en el documento titulado "Reporte de Investigación", fechado el 16 de junio de

---

[38] Véase, Deposición Willie Loubriel Vélez Vol. II, Págs. 109-110, Líneas: 2-7 y Exhibit N de la Querellada, *supra*.
[39] Véase, RFI #117 (Exhibit M de la Querellada).
[40] Véase, Exhibit N de la Querellada, *supra*.
[41] Véase, Exhibit N de la Querellada, *supra*.
[42] *Íd*.
[43] Véase, Deposición Carlos E. Arroyo De Jesús, Págs. 64-65, Líneas: 25-15 y Deposición Carlos E. Arroyo De Jesús Vol. 2, Pág. 291, Líneas: 2-7; Pág. 292, Líneas: 3-8.

2022 y suscrito por la Sra. Marilyn Rodríguez del componente de recursos humanos de Aireko, reflejaron que el querellante: [...] aun cuando fue notificado tanto por la inspección como por Luis Rivera no notifico [sic] a la gerencia del proyecto sobre la deficiencia en la fabricación de la varilla. [...] que cuando tuvo conocimiento del error en la fabricación de la varilla no tomo [sic] acción permitiendo que se siguiera cometiendo el mismo error en por lo menos 6 vigas adicionales.[44]

33. Del reporte de investigación también se desprende que el querellante y otros empleados "cometieron acciones y omisiones que violaron los 5 elementos de Cumplimiento Total", entiéndase: integridad, seguridad, satisfacción al cliente, trabajo completado a tiempo, y trabajo completado según presupuesto.[45]

34. Conforme al Manual del Empleado, las "fallas de seguridad, grave o repetitivas" conllevan el despido inmediato, aunque sea la primera violación del empleado, ante la gravedad y el impacto negativo que dichas conductas presentan a las operaciones, seguridad y estabilidad de la empresa.[46]

35. La citada norma aclara que la lista de conductas que conllevan despido inmediato "no pretende ser exhaustiva y podrán haber otras situaciones que dependiendo de su gravedad y las circunstancias que la rodean puedan conllevar la terminación de empleo".[47]

36. El Comité Ejecutivo de Aireko discutió los resultados de la investigación y tomó la decisión de despedir al querellante.[48]

37. El querellante fue despedido por Aireko el 28 de julio de 2022,[49] como consecuencia de la investigación del Proyecto de Carolina.[50]

38. El señor Loubriel Vélez admitió que se le notificaron las razones de su despido, entiéndase, "el incidente de la instalación de acero de las varillas y por los asuntos de seguridad que habían sucedido".[51]

39. El querellante conocía que, si tenía preguntas o situaciones, podía acudir ante la oficina de Recursos Humanos.[52]

---

[44] Véase, Exhibit N, *supra*.
[45] *Íd.*
[46] Véase, Exhibit A, *supra*.
[47] *Íd.*
[48] Véase, Deposición Carlos E. Arroyo De Jesús, Págs. 145-146, Líneas: 25-16.
[49] Véase, Hecho 6 estipulado por las partes.
[50] Véase, Notificación de cambio en condición del empleado (Exhibit O de la Querellada).
[51] Véase, Deposición Willie Loubriel Vélez Vol. II, Págs. 55-57, Líneas: 5-2; Pág. 107, Líneas: 20- 25.
[52] Véase, Deposición Willie Loubriel Vélez Vol. II, Págs. 33-34, Líneas: 15-1.

40. Durante su periodo como empleado de Aireko, el señor Loubriel Vélez nunca presentó ante el Departamento de Recursos Humanos, alguna duda con respecto a los deberes de sus puestos, el Manual del Empleado, las Normas de Comportamiento y Seguridad, las políticas de Aireko o el Código de Conducta del Negocio.[53]

41. El señor Loubriel Vélez admitió tener conocimiento de que el empleado que se desempeñaba como "varillero" en el Proyecto de Carolina, José Núñez Camacho, también fue despedido de Aireko.[54]

42. El querellante admitió que, tras su despido de Aireko, se mantuvo recibiendo compensación económica debido a que, inmediatamente devengó los beneficios del desempleo y, aproximadamente un mes después, comenzó a laborar como *Project Manager* para otra compañía.[55]

43. El señor Loubriel Vélez admitió que, al momento de entrevistarse para la posición que desempeña en su trabajo actual, le explicó al personal que fue despedido de Aireko porque "hubo un incidente con unas vigas, una instalación de acero de unas vigas y unos alegados [sic] razones por seguridad, de un incidente de seguridad".[56]

Así pues, luego de tomar en consideración las determinaciones de hechos antes mencionadas, la prueba documental y testimonial ofrecida por las partes y el derecho aplicable, el foro *a quo* concluyó lo siguiente:

> [E]n este caso, ha quedado evidenciado que: (1) el Querellante incurrió en falta grave de seguridad contemplada en el Manual del Empleado, normas y procedimientos de la Compañía; (2) el Querellante realizó su trabajo de manera negligente y en violación de las normas de seguridad de Aireko y (3) el Querellante incumplió las normas razonablemente establecidas por Aireko para su buen funcionamiento, las cuales éste recibió y conocía.
>
> A la luz de lo anterior, es forzoso concluir que el despido del querellante obedeció al hecho de que éste cometió violaciones reiteradas a las normas de la empresa, las cuales eran de su conocimiento y las cuales son completamente razonables para el buen manejo y la sana administración de los negocios de Aireko. A base de todo lo anterior, resulta evidente que Aireko

---

[53] *Íd.*
[54] Véase, Deposición Willie Loubriel Vélez Vol. II, Págs. 98-99, Líneas: 14-13.
[55] Véase, Deposición Willie Loubriel Vélez Vol. II, Págs. 100-105, Líneas: 16-6.
[56] Véase, Deposición Willie Loubriel Vélez Vol. II, Págs. 105-106, Líneas: 7-1.

actuó correcta y prudentemente al despedir al Querellante. A base de las circunstancias presentes en este caso y de las normas de Aireko, la Querellada no tenía otro remedio que no fuera despedir al Querellante. La Querellada cumplió cabalmente con lo dispuesto en la Ley 80, *supra*, al brindarle múltiples oportunidades al empleado antes de despedirlo. [...]. En consecuencia, se desestima con perjuicio su reclamación de despido injustificado.

En vista de lo antes expuesto, el foro primario declaró *Ha Lugar* la *Solicitud de Sentencia Sumaria* presentada por Aireko y desestimó con perjuicio la *Querella* sin especial imposición de costas ni honorarios de abogado. Por consiguiente, declaró *No Ha Lugar* la solicitud de sentencia sumaria instada por el señor Loubriel.

Inconforme, el 4 de octubre de 2024, el señor Loubriel presentó una apelación y formuló los siguientes señalamientos de error:

Erró el TPI al acoger hechos propuestos por la querellada – apelada como incontrovertidos, a pesar de no haber sido sustentados mediante prueba admisible, ser contradictorios con relación a la prueba que obra en autos y haber sido debidamente controvertidos por el Sr. Loubriel.

Erró el TPI al declarar Ha Lugar la Solicitud de Sentencia Sumaria de la parte querellada-apelada, a pesar de su incumplimiento con las exigencias de la Regla 36 de Procedimiento Civil.

Erró el TPI al no adjudicar la solicitud de sentencia sumaria presentada por el Sr. Loubriel, disponiendo de esta únicamente mediante un No Ha Lugar, a pesar de que los hechos expuestos en la misma fueron sustentados mediante prueba admisible y no fueron válidamente controvertidos.

Erró el TPI al negarse a tomar conocimiento judicial de las admisiones de la apelada que surgen de los escritos en el expediente judicial de otro pleito laboral, a pesar de que las mismas refutan directamente las propias alegaciones de la querellada-apelada en el caso de epígrafe y demuestran la procedencia de las reclamaciones del Sr. Loubriel.

> Erró el TPI al desestimar con perjuicio las reclamaciones de despido injustificado y discrimen por edad del Sr. Loubriel.

El 4 de noviembre de 2024, la parte apelada presentó su alegato en oposición.

Contando con la comparecencia de ambas partes, procedemos a resolver.

## II.

### -A-

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Así, el tribunal podrá dictar sentencia sumaria parcial para resolver cualquier controversia que sea separable de las controversias restantes. 32 LPRA Ap. V, R. 36.1; *Camaleglo v. Dorado Wings, Inc.*, 118 DPR 20, 25 (1986). Este mecanismo procesal es un remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa que trate. *Cruz, López v. Casa Bella y otros*, 2024 TSPR 47, 213 DPR __ (2024); *Oriental Bank v. Caballero García*, 212 DPR 671, 678 (2023); *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018).

Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable". *Oriental Bank v. Caballero García*, supra, pág. 679; *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 980. De este modo, y debido a la ausencia de

criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Universal Ins. y otro v. ELA y Otros*, 211 DPR 455, 457 (2023); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Luan Invest. Corp. v. Rexach Const. Co.*, 152 DPR 652, 665 (2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así la economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 979-980; *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Roldán Flores v. M. Cuebas et al.*, supra, pág. 676; *Vera v. Dr. Bravo, supra*, pág. 334; PFZ *Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer mediante prueba admisible en evidencia la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Rodríguez García v. UCA*, supra, pág. 941; *Ramos Pérez v. Univisión*, 178 DPR 200, 218 (2010); *Vera v. Dr. Bravo*, supra, pág. 333. Para que

tal sea el resultado, viene llamado a desglosar en párrafos numerados los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que sirven de apoyo a su contención. 32 LPRA Ap. V, R. 36.3(a)(4); *Roldán Flores v. M. Cuebas, et al.*, supra pág. 677; SLG *Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432-433 (2013).

Para derrotar una moción de sentencia sumaria, la parte que se opone a la misma viene llamada a presentar declaraciones juradas o documentos que controviertan las alegaciones pertinentes. 32 LPRA Ap. V, R. 36.5. Por ello, tiene la obligación de exponer de forma detallada aquellos hechos relacionados al asunto que evidencien la existencia de una controversia real que deba ventilarse en un juicio plenario. *Roldán Flores v. M. Cuebas, et al.*, supra, pág. 678; *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 434; *Rodríguez de Oller v. TOLIC*, 171 DPR 293, 311 (2007). En esta tarea, tiene el deber de citar específicamente los párrafos, según enumerados por el promovente, sobre los cuales estima que existe una genuina controversia y, para cada uno de los que pretende controvertir, detallar de manera precisa la evidencia que sostiene su impugnación. Regla 36.3(b)(2) de Procedimiento Civil, supra; *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 433.

Cuando de las propias alegaciones, admisiones o declaraciones juradas surge una controversia *bona fide* de hechos, la moción de sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria en el caso y cualquier duda en su ánimo lo debe llevar a resolver en

contra de dicha solicitud. *Vera v. Dr. Bravo*, supra, págs. 333-334; *Mgmt. Adm. Servs., Corp. v. ELA*, 152 DPR 599, 611 (2000). Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos. *Rodríguez García v. UCA*, supra, pág. 941; *Roig Com. Bank v. Rosario Cirino*, 126 DPR 613, 618 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 185 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 981-982; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo*, supra, pág. 334.

En *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119, el Tribunal Supremo de Puerto Rico estableció el estándar específico a emplearse por este foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias. A tal fin, se expresó como sigue:

> Primero, reafirmamos lo que establecimos en *Vera v. Dr. Bravo*, supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de

Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, supra, y discutidos en *SLG Zapata-Rivera v. JF Montalvo*, supra.

Tercero, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

Cuarto, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

## -B-

La Ley Núm. 80 de 30 de mayo de 1976, conocida como la *Ley Sobre Despidos Injustificados*, según enmendada, 29 LPRA sec. 185 *et seq.*, fue aprobada con el propósito de proteger el derecho de los trabajadores y desalentar los despidos injustificados. Este estatuto provee un remedio de compensación económica a empleados cuando sus patronos actúen en contravención a sus disposiciones. 29 LPRA sec. 185a; *Díaz v. Wyndham Hotel Corp.*, supra, pág. 375. Conforme a esta ley, todo empleado que haya

sido contratado por un periodo de tiempo indeterminado, mediante remuneración, que sea despedido sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono una indemnización.    29 LPRA sec. 185a; *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 775 (2022).

Con la aprobación de la Ley Núm. 4-2017, la Ley Núm. 80, *supra,* sufrió una serie de enmiendas, entre estas "se eliminó de la ley la frase que le imponía el peso de la prueba al patrono en los casos de [Ley Núm. 80]" *Ortiz Ortiz v. Medtronic,* supra, pág. 776 citando a E. García García, *El legado e implicaciones de la reforma laboral de 2017,* 86 Rev. Jur. UPR 1087, 1156 (2017).

Debemos enfatizar que, la Ley Núm. 80, *supra,* no proscribe la acción de despido, si no que le impone al patrono un elemento disuasivo para no despedir al trabajador sin que medie justa causa.    Luis H. Sánchez Caso, *Reflexiones Sobre La Responsabilidad Civil de los Oficiales y Gerenciales en Reclamaciones de Despido o Discrimen,* 34 Rev. Jur. UIPR 183, 210-211 (2000).    Por lo que, si existe justa causa, el empleado puede ser despedido sin penalidad para el patrono. *Santiago v. Kodak Caribbean, Ltd.,* 129 DPR 763, 775 (1992).    En cuanto al concepto de justa causa, este es uno dinámico que dependerá de la relación particular del trabajo y de las circunstancias que rodean el evento motivador del despido. *Srio. del Trabajo v. G.P. Inds., Inc.,* 153 DPR 223, 243 (2021).

En cuanto a que se entenderá como justa causa, el Art. 2 de la Ley Núm. 85-1976, 29 LPRA sec. 185b, establece:

Se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:

(a) Que el empleado incurra en un patrón de conducta impropia o desordenada.

(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento. 29 LPRA sec. 185b.

**-C-**

Por otro lado, la Asamblea Legislativa aprobó la Ley Núm. 100 de 30 de junio de 1959, conocida como la *Ley Contra el Discrimen en el Empleo*, 29 LPRA sec. 146 *et seq.*, para ofrecer una protección eficaz a los trabajadores contra diversos tipos de discrimen en el ámbito laboral. *Mestres Dosal v. Dosal Escandón*, 173

DPR 62, 68 (2008). Con su aprobación, los empleados recibieron una protección contra despidos por razón de edad, raza, color, sexo, origen social o nacional, condición social, afiliación política, ideas políticas o religiosas, o por ser víctima de violencia doméstica, agresión sexual o acecho. *Íd.*

Cabe señalar que, en su origen, la Ley Núm. 100, *supra*, establecía una presunción controvertible a favor del empleado de que el despido había sido discriminatorio, salvo que el patrono demostrara la existencia de justa causa para el despido. *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 988. Sin embargo, con la aprobación de la Ley Núm. 4 de 26 de enero de 2017, conocida como la *Ley de Transformación y Flexibilidad Laboral,* 29 LPRA sec. 121, *et seq.,* se eliminó la disposición de presunción anterior y se estableció la norma del caso *prima facie* de discrimen conforme al estándar probatorio establecido en *McDonnell Douglas Corp. v. Green,* 411 US 792 (1973). Bajo tal esquema, el empleado deberá probar: (1) que pertenece a una clase protegida por la legislación; (2) que está cualificado para el puesto; (3) que fue objeto de una acción adversa; y (4) que se benefició otra persona que no pertenece al mismo grupo protegido. *Segarra Rivera v. Int'l. Shipping et al.,* supra, págs. 989-990; *McDonnell Douglas Corp. v. Green,* supra, pág. 802; *Guías para la Interpretación de la Legislación Laboral de Puerto Rico, Departamento del Trabajo y Recursos Humanos,* 1ra. Ed., 8 de mayo de 2019, págs. 157-158.

Una vez el empleado haya establecido el caso *prima facie,* le corresponderá al patrono demostrar que posee una explicación razonable que justifique sus acciones y

que no se trata de un acto discriminatorio. *McDonnell Douglas Corp. v. Green,* supra. En estos casos, el patrono podrá: (1) presentar prueba que derrote el hecho básico de que el despido fue uno injustificado; (2) destruir el hecho presumido, que el despido fue discriminatorio o (3) presentar prueba para destruir el hecho básico y el presumido a la vez. *Segarra Rivera v. Int'l. Shipping et al.,* supra, pág. 989; *López Fantauzzi v. 100% Natural,* 181 DPR 92, 124 (2011); *Díaz v. Wyndham Hotel Corp.,* 155 DPR 364, 390 (2001).

**-D-**

El conocimiento judicial es un medio de prueba que pretende establecer un hecho como cierto sin la necesidad de presentar evidencia. *UPR v. Laborde Torres y otros I,* 180 DPR 253, 276 (2010) citando a E.L. Chiesa, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales,* [ed. de autor], 1998, T. II, Sec. 13.1, pág. 1129. Por lo que, si un tribunal toma conocimiento judicial de un hecho adjudicativo, significa que ese hecho es aceptado como si fuese cierto, sin que la persona que lo ofrece presente prueba de su veracidad y se presumirá que la cuestión es tan notoria que no está en disputa. *Íd.,* pág. 277. Independientemente de lo establecido, esto no impide que la parte contraria ofrezca prueba en contrario. *Íd.*

La Regla 201 de Evidencia de Puerto Rico, *supra,* establece en lo pertinente:

> (A) Esta regla aplica solamente al conocimiento judicial de hechos adjudicativos.
>
> (B) El tribunal podrá tomar conocimiento judicial solamente de aquel hecho adjudicativo que no esté sujeto a controversia razonable porque:
>
> > (1) Es de conocimiento general dentro de la jurisdicción territorial del tribunal, o

(2) es susceptible de corroboración inmediata y exacta mediante fuentes cuya exactitud no puede ser razonablemente cuestionada.

(C) El tribunal podrá tomar conocimiento judicial a iniciativa propia o a solicitud de parte. Si es a solicitud de parte y ésta provee información suficiente para ello, el tribunal tomará conocimiento judicial.

(D) Las partes tendrán derecho a ser oídas en torno a si procede tomar conocimiento judicial. De no haber sido notificada oportunamente por el tribunal o por la parte promovente, la parte afectada podrá solicitar la oportunidad de ser oída luego de que se haya tomado conocimiento judicial.

(E) El tribunal podrá tomar conocimiento judicial en cualquier etapa de los procedimientos, incluyendo la apelativa.

(F) En casos criminales ante jurado, la jueza o el juez instruirá a las personas miembros del jurado que pueden, pero no están obligados a aceptar como concluyente cualquier hecho del cual haya sido tomado conocimiento judicial.

Nuestro Tribunal Supremo ha expresado que bajo las disposiciones de esta regla los foros sentenciadores pueden tomar conocimiento judicial de "los procedimientos celebrados y de la sentencia o resolución dictada" sobre cualquier causa seguida en el mismo tribunal o en otro tribunal dentro de la jurisdicción de este. *Asoc. de Periodistas v. González*, 127 DPR 704, 714-715. Esto es así pues al "tratarse de hechos cuya comprobación o determinación puede efectuarse de forma exacta e inmediata (sólo hay que acudir a la secretaría del tribunal en cuestión), es innecesario exigir en estos casos que se presente evidencia formal de los mismos". *Íd.*

## III.

En el caso de autos, el señor Loubriel solicita que revoquemos el dictamen emitido por el foro primario, mediante el cual declaró *Ha Lugar* la *Solicitud de Sentencia Sumaria* presentada por Aireko y *No Ha Lugar* a

su *Solicitud de Sentencia Sumaria*, por consiguiente, desestimó con perjuicio la querella sobre despido injustificado y discrimen por edad. En su recurso, el apelante señaló la comisión de cinco (5) errores.

No obstante, antes de evaluar los méritos del recurso, debemos examinar las mociones de sentencias sumarias con sus respectivos anejos, a la luz del derecho aplicable, para así justipreciar la corrección de la determinación del foro primario. A esos efectos, procede evaluar si ambas partes cumplieron los requisitos de forma que exige la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. Un análisis de los documentos sometidos nos lleva a concluir que que ambas partes cumplieron con los requisitos de forma establecidos en la Regla 36 de Procedimiento Civil, *supra*. En ese sentido, adoptamos por referencia las cuarenta y tres (43) determinaciones de hechos incontrovertidas que esbozó el foro *a quo* en la *Sentencia*, por entender que están sustentados en la prueba que se acompañó.

Superado lo anterior, atenderemos los señalamientos de error presentados por el apelante. Los primeros tres señalamientos de error los discutiremos en conjunto por estar estrechamente relacionados. En esencia, el señor Loubriel alega que incidió el foro primario al adjudicar la sentencia sumaria instada por la parte apelada, aun cuando no cumplió con la Regla 36 de Procedimiento Civil, *supra*. Añadió que, los hechos propuestos por Aireko no habían sido sustentados con prueba admisible. Finalmente, indicó que erró el foro primario al realizar determinaciones de hechos que no se sostienen con la

prueba y sobre los cuales había prueba contradictoria e inconsistente.

De entrada, destacamos que los hechos incontrovertidos formulados por el foro apelado en su determinación tomaron en consideración las mociones de sentencia sumaria de Aireko y del señor Loubriel, así como sus respectivas oposiciones. Por tanto, al igual que nosotros, el foro primario entendió que los escritos cumplían con los requisitos de forma de la Regla 36 de Procedimiento Civil, *supra*. Aun así, una lectura de la Regla, así como un estudio de la jurisprudencia interpretativa de esta, nos permite apreciar que ello conllevaría que el tribunal pueda dictar sentencia sumaria si procede en derecho. Por lo tanto, resolvemos que los primeros tres (3) errores no fueron cometidos. Determinamos que los documentos que acompañan la moción de sentencia sumaria apoyan adecuadamente las determinaciones de hechos esenciales acogidas por el foro primario.

En cuanto al cuarto señalamiento de error, el señor Loubriel arguye que incidió el foro de instancia al negarse a tomar conocimiento judicial de las admisiones de la parte apelada que surgen de los escritos en el expediente judicial de otro pleito laboral. Señala que, solicitó se tomara conocimiento judicial, de las admisiones de Aireko en otro pleito que se ventila ante el foro primario en relación al señor Núñez. Sostiene que, dichas admisiones son compatibles con los hallazgos del reporte de investigación preparado por la compañía, el cual incorrectamente determinó que el apelante había incurrido en faltas. Añadió que, de las admisiones se

demuestra que éste no fue quien incurrió en las faltas, ni autorizó las mismas.

Por su parte, Aireko expresó que el apelante pretende forzar una versión de los hechos que no corresponde con la verdad del despido, puesto que, su razón del despido iba dirigido a los deberes de su supervisión. Por lo que, la actuación del señor Nunez y del apelante eran independientes.

Según discutimos, la controversia principal gira en torno al alegado despido injustificado y discrimen por edad contra el señor Loubriel. Conforme surge del expediente, el apelante solicitó que se tomara conocimiento judicial de unas admisiones por la parte apelada, sin embargo, dichas alegaciones no constituyen un hecho adjudicativo en el caso. En efecto, Aireko manifestó que el señor Loubriel dio las instrucciones, y fue el señor Núñez quien no las siguió. No obstante, dicho acto no fue lo que provocó el despido, sino su incumplimiento como supervisor al no notificar del error, ni tomar alguna otra acción. Por tanto, concluimos que el foro primario no incidió al no tomar conocimiento judicial.

En su último señalamiento de error, el apelante sostuvo que erró el foro primario al desestimar con perjuicio su reclamo por despido injustificado y discrimen por edad. En específico, alega que, el 15 de febrero de 2021, fue contratado por la parte apelada para la posición de *"Project Manager"*. Sin embargo, que luego de once (11) meses de su contratación fue notificado de un descenso a *"Superintendente Senior"*, siendo su supervisor el señor Dieppa, quien es más joven que él. Señala que, en varias ocasiones solicitó le

explicaran los motivos para el cambio de puesto, pero que nadie se los proveyó. A su vez que, nunca recibió una descripción para el nuevo puesto, ni la hoja de deberes.

Por otro lado, indicó que el 9 de junio de 2022, fue notificado por primera vez del problema con la instalación de las varillas. Reiteró que, la instalación de empalmes de varillas no los realizó él, sino el señor Núñez, y que tampoco los realizó bajo su supervisión. Finalmente, arguye que logró establecer un caso *prima facie* al establecer que se encontraba en la edad protegida, estaba cualificado para su puesto, y aun así fue descendido. Añadió que, fue sustituido por una persona más joven, y despedido de forma injustificada.

Por otro lado, Aireko esboza que el apelante no logró establecer un caso *prima facie*, puesto que, no pudo probar que fuera reemplazado por alguien más joven. Insistió en que, nadie sustituyó ni ocupó su posición en el proyecto de Carolina. Por ello, esboza que el despido fue justificado por razón de problemas de desempeño. y violaciones a las normas de la Compañía.

Según surge en el *Manual del Empleado* de Aireko, una falta de seguridad, grave o repetitiva conlleva el despido inmediato, puesto que, dicha conducta afecta gravemente las operaciones de la Compañía, incluyendo su seguridad y estabilidad, aun cuando fuera una primera violación del empleado.[57] A su vez, las *Normas de Comportamiento y Seguridad* de Aireko, establecen que el empleado deberá informar inmediatamente cualquier

---

[57] *Manual del Empleado*, pág. 260 del apéndice del recurso.

condición insegura que note, al igual que cualquier accidente o incidente a su supervisor.[58]

De otra parte, el documento sobre la descripción del puesto de "*Senior Superintendent*", el cual, a pesar de que el apelante alega no lo recibió, sí reconoció que le fueron enviados los documentos y éste no los quiso firmar, dispone que forman parte de sus responsabilidades y deberes: (1) supervisar toda la construcción en el site, incluyendo la coordinación de subcontratistas, la resolución de problemas cotidianos en el *job site* y la inspección de todo el trabajo durante la construcción para garantizar el cumplimiento de los planes y especificaciones; (2) prestar atención al detalle y monitoreo diario del trabajo en proceso para asegurar la integridad del trabajo, y que esté a la altura de los estándares de calidad de Aireko Construction; (3) asegurar que todo el personal del proyecto y los contratistas comprendan e implementen los requisitos de seguridad en el trabajo, trabajando con el personal de apoyo de seguridad como recurso. Se esfuerza continuamente por tener cero lesiones en todos los proyectos, entre otros.

Surge del expediente que, las razones para el despido del señor Loubriel fue la falta de supervisión adecuada como parte de sus labores, violaciones reiteradas de las normas de la Compañía y problemas de desempeño. La documentación incluida por las partes revela que, el apelante fue objeto de varias acciones disciplinarias por violaciones a las normas de Aireko. Entre ellas, incidente de seguridad, en el cual le

---

[58] Véase, *Normas de Comportamiento y Seguridad*, entrada núm. 140, anejo (6) en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

apercibieron que todo incidente debía ser reportado; en su evaluación individual de desempeño obtuvo una puntuación de 2.75 de 4.00, en esencia, señalaron que debía buscar la forma de conocer las políticas y normas de la empresa en el aspecto de seguridad en los proyectos; amonestación escrita por no cumplir con las expectativas de velar que sus supervisados implementaran y practicaran las expectativas de seguridad, entre otros. En cuanto a este último incidente, el apelante se negó a firmar la amonestación. Por último, surgió el incidente con la instalación de los empalmes de varillas en Carolina. La parte apelada luego de una investigación concluyó que varios empleados, entre ellos el señor Loubriel cometieron acciones y omisiones que violaron los elementos de cumplimiento total, siendo estos: integridad, seguridad, satisfacción al cliente, trabajo completado a tiempo, y trabajo completado según presupuesto. Como consecuencia, Aireko aplicó la disciplina progresiva y decidió despedir al señor Loubriel.

Es por ello, que concluimos que los documentos incluidos junto con las mociones de sentencia sumaria sostienen las determinaciones de hechos consignados por el foro primario. El despido del señor Loubriel efectuado por Aireko se ajustó a los requerimientos jurídicos que rigen en materia laboral, pues la investigación demostró que el apelante incumplió con los deberes de su puesto, así como las normas y políticas establecidas por la Compañía. Por lo tanto, Aireko demostró justa causa para el despido del señor Loubriel, en virtud de a Ley Núm. 80, *supra*.

Por otro lado, en cuanto a las alegaciones de discrimen en el empleo por razón de edad, el apelante no logró establecer su caso *prima facie*, ya que no pudo demostrar que con su despido se benefició una persona que no pertenece al mismo grupo protegido, según lo requiere la Ley Núm. 100, *supra*. Por el contrario, el señor Loubriel descansó en meras alegaciones de que fue sustituido por una persona más joven. No pudiendo demostrar que se configuró la modalidad de discrimen que este reclama, es decir que fue sustituido por una persona más joven, no se configuraron los hechos bases para poder sostener la presunción de discrimen.

Por tanto, concluimos que el foro primario actuó correctamente al desestimar la presenta causa por la vía sumaria.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana Martínez disiente con opionión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| WILLIE LOUBRIEL VÉLEZ | | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Carolina |
|---|---|---|
| Apelante | | |
| v. | KLAN202400899 | Civil Núm. CA2022CV02871 |
| AIREKO CONSTRUCTION MANAGEMENT SERVICES, LLC. | | Sobre: Despido Injustificado Discrimen por edad Ley Núm. 2 |
| Apelada | | |

Panel integrado por su presidenta, la Jueza Grana Martínez[1], el Juez Bonilla Ortiz y el Juez Pagán Ocasio.

## VOTO DISIDENTE JUEZA GRANA MARTÍNEZ

La existencia de hechos esenciales en controversia me obliga a disentir de la opinión mayoritaria. El TPI concluyó sumariamente que el despido del apelante fue justificado. No obstante, realicé un juicio de novo minucioso de la totalidad del expediente y encontré que existen controversia de hechos esenciales que impiden la adjudicación sumaria de la reclamación por despido injustificado.

El puesto ocupado por el apelante, cuando ocurrieron los hechos por los que fue despedido, es un hecho esencial en controversia. Este hecho es de suma importancia para establecer, si el despido estuvo justificado. El apelado alega que fue despedido porque incumplió con los deberes de su puesto. Según el patrono el apelante se desempeñaba como **Senior Superintendent.** El apelante alega que fue contratado como **Proyect Manager** y que el apelado cambió su puesto unilateralmente a **Senior Superintendent.** Ambas partes coinciden en que el apelante comenzó a trabajar el 16 de agosto de 2021 mediante un contrato a tiempo indeterminado. Igualmente están de acuerdo de que en el

---

[1] En virtud de la Orden Administrativa OATA-2023-116, se designa a la Hon. Grace M. Grana Martínez.

contrato escrito consta que ocuparía la posición de **Proyect Manager** y que se reportaría a Carlos Arroyo. Página 441 del Apéndice del Recurso. El apelado atribuyó a un error que constara que ocupaba esa posición. No obstante, estipuló que el apelante. fue notificado el 1 de enero del cambio de su posición como **Proyect Manager** a **Senior Superintendent,** retroactivo al 27 de diciembre de 2021. Página 1180 del Apéndice del Recurso. La existencia de esa carta consta en el expediente. Página 164 del Apéndice del Recurso. El señor Carlos Arroyo De Jesús admitió en su deposición que el cambio de la clasificación del apelante se realizó el 1 de enero de 2022. Página 491 del apéndice del recurso. El testigo de la apelada no recordó, si el apelante fue notificado del cambio antes de esa fecha, ni si existe un documento de cambio de posición anterior Página 496 del Apéndice del Recurso. Sin embargo, admitió que fue quien decidió el cambio de puesto junto a Rodolfo Puig. Página 498 del Apéndice del Recurso.

El apelante explicó que ignoró el correo electrónico en el que se le informó el cambio de puesto, para que lo llamaran y le explicaran la razón del cambio. Páginas 336, 941 del Apéndice del Recurso. Según su versión, lo llamaron por teléfono de Recursos Humanos, para preguntarle si recibió el correo y si podía firmarlo, y él se negó. Páginas 942-944 del Apéndice del Recurso. El apelante declaró que informó su desacuerdo con el cambio, porque era un descenso. Páginas 332, 937 del Apéndice del Recurso.

Otro hecho esencial que no está claro es, si el apelado informó y proveyó al apelante los deberos del puesto de **Senior Superintendent** que alega ocupaba cuando fue amonestado y despedido. El señor Arroyo admitió que no le constaba si el apelante firmó un documento con la descripción de ese puesto. Página 507 del Apéndice del Recurso. Este hecho es importante, porque el apelado alega que el apelante recibió varias amonestaciones, por



incumplir con los deberes del puesto de **Senior Superintendent.** El apelante fue amonestado, porque no reportó un accidente laboral. Página 376 del Apéndice del Recurso. No obstante, el apelante no firmó la amonestación, porque no fue orientado de que tenía que reportar incidente como parte de los deberes de su puesto. Páginas 377- 379, 389, 982, 984, 988 del Apéndice del Recurso.

Tampoco está claro, cuando el apelante se enteró que las varillas se estaban fabricando defectuosamente, si es que ocurrió. La prueba es insuficiente para establecer de manera incontrovertible que (1) la fabricación de varillas estaba prohibida, (2) las varillas se fabricaron de forma defectuosa y el apelante lo sabía y lo ocultó y (3) si el problema estaba relacionado a la fabricación de las varillas o a su instalación o a ambas cosas. Estos hechos son sumamente relevantes, porque el apelado alegó que el apelante no tomó acción ante una falta grave en la fabricación de materiales de construcción Página 13 del Apéndice del Recurso. Según el apelado problema fue ocasionado por la instalación de acero en las varillas Página. 1178 del Apéndice del Recurso. El señor Arroyo declaró que apelante sabía que se construyó una varilla incorrectamente y no lo reportó, ni tomó acción inmediata. Página 513 del Apéndice del Recurso.

El testimonio de Arroyo es confuso sobre lo que constituye fabricación de varillas y lo que es su instalación. Este hecho es determinante porque el despido fue por la fabricación incorrecta de varillas. El señor Arroyo explicó que existe diferencia entre el largo del empalme y que el empalme no se haga en el lugar correcto. Página 518 del Apéndice del Recurso. No obstante, se le preguntó cómo se construyen las varillas y contestó que se supone que se hagan unos empalmes de varilla cerca del punto medio entre columna y columna y se hizo pegado a la columna. Página 515 del Apéndice del Recurso. Su contestación, nos parece que está más relacionada con la instalación que con la construcción de las

varillas. El patrono ha dicho que el despido está relacionado a la construcción incorrecta de varillas.

El apelante admitió que se le informó que estaban fabricando varillas "on site", porque no se estaban recibiendo suficientes. No obstante, según él, los planos y los "shop drawing" no prohibían la fabricación de varillas "on site". Páginas. 28, 1063 del Apéndice del Recurso. Su explicación no significa y no es una admisión de que la fabricación fue defectuosa. El apelante declaró que se enteró de los problemas en la fabricación e instalación de las varillas, el 9 de junio de 2022. Según su testimonio ese día el inspector del municipio, le informó que la varilla se cortó y se cambió la localización de los empalmes especificada en el "shop drawing". El apelado aceptó que el apelante hizo un "request for information" tan pronto como el 13 de junio de 2022. Página 1177 del Apéndice del Recurso. El señor Arroyo reconoció que no sabía (1). la fecha en que el apelante se enteró que las varillas se estaban poniendo mal y (2) si el contrato prohibía la fabricación de varillas. Páginas 593 y 629 del Apéndice del Recurso. Sin embargo, reconoció que había problemas con el suplido de varillas, porque no pagaban a tiempo. Página 626 del Apéndice del Recurso.

El apelado, alega que el apelante admitió en su entrevista, que se enteró de los problemas con las varillas, antes de que se lo dijera el inspector del municipio. Las alegaciones del patrono adoptadas por el TPI como hechos probados están basadas en Reporte de Investigación. El TPI dio por admitido el reporte, porque las partes no levantaron objeciones específicas sobre los documentos anunciados. Sin embargo, consta en el Informe Conjunto sobre Conferencia con Antelación al Juicio la objeción expresa del apelante a la presentación de prueba sin autenticar. Página 1204 del Apéndice del Recurso. El apelante ha alegado constantemente que



ese informe no fue autenticado. No encontramos evidencia en el expediente de que fue autenticado.

Por otro lado, tomamos conocimiento judicial de que el apelado dio una versión muy distinta en otros casos relacionados. El apelado admitió en el CG 2023 CV01640 que el varillero (1) trabajó contrario a lo establecido en el plano. (2) cambió el "drawing" sin autorización de los supervisores y sin notificar a la gerencia, (3) instaló los empalmes de forma defectuosa, por iniciativa propia y a pesar de que el superintendente le dio instrucciones de no hacerlo y (4) cortó las varillas y cambió la localización de los empalmes especificados en el shop "drawing". Igualmente tomamos conocimiento judicial que el apelado admitió en el CG 2022 CV 03502 que el varillero (1) mintió sobre la reunión que dijo tuvo con el apelante y las instrucciones que recibió. Página 20 del Apéndice del Recurso, (2) desobedeció una instrucción directa del superintendente Página. 52 del Apéndice del Recurso. (3) mintió cuando dijo que se reunió con el apelante y sobre las instrucciones que recibió. Página 56 del Apéndice del Recurso. Por último, el apelado reconoció en el CG 2022 CV 03650 el que el apelante se enteró en junio de 2022, de las deficiencias en la fabricación de las varillas. Página 169 del Apéndice del Recurso.

Este tribunal no puede pasar por alto que la sentencia sumaria solo procederá cuando quede demostrado que no existe controversia de hechos esenciales o si la controversia está basada en elementos subjetivos. El remedio extraordinario de la sentencia sumaria bien utilizado sirve a la economía procesal y a la solución rápida de los litigios. No obstante, si es mal utilizado tiene el efecto de privar a un litigante del derecho a su día en corte. A nuestro juicio, ese el efecto que la sentencia sumaria que dictó el TPI y confirmó la mayoría tiene para el apelante. Por esa razón difiero de la mayoría. No estoy de acuerdo en privar al apelante de su día en



corte, porque estoy convencida de que existe controversia de hechos materiales y es necesario realizar un juicio en su fondo.

En San Juan, Puerto Rico, a 31 de marzo de 2025.

GRACE M. GRANA MARTÍNEZ
Jueza de Apelaciones